Saime Atakan
GlobalB Law Firm, PC
8909 Olympic Blvd
Beverly Hills, CA 90211
Tel: (909) 334 2398
Email: saime@globalb.law
Attorney for Abdullah Koroglu

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ABDULLAH KOROGLU

*Petitioner*,

v.

**DAVID J. VENTURELLA**, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; **JAMES JANECKA**, in his official capacity as Warden / Facility Director of Adelanto ICE Processing Center; **MARKWAYNE MULLIN** in his official capacity as the Secretary of Homeland Security; **TODD BLANCHE** in his official capacity as the Attorney General of the United States,

*et al.*,

*Respondents.*

Case No.

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

## EXECUTIVE SUMMARY

1. Petitioner Abdullah Koroglu ("Petitioner") respectfully submits this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his continued civil immigration detention by the Department of Homeland Security ("DHS") and its component agency, U.S. Immigration and Customs Enforcement ("ICE"). This Petition seeks judicial intervention to remedy an ongoing deprivation of liberty that has become unreasonable, excessive, and unconstitutional under the Fifth Amendment.

2. Petitioner, A# 241-752-919, has been detained in immigration custody since August 29, 2026, despite presenting no danger to the community and no genuine risk of flight. He has been detained in Adelanto ICE Processing Center detention center.

3. Petitioner entered the United States in approximately June 2022 and has remained in the United States while pursuing protection from removal. Since his release into the community, Petitioner has established substantial ties to the United States. He maintains regular employment, has close relationships with family members and friends, and has no criminal history whatsoever.

4. Most importantly, Petitioner did not disregard his obligations to ICE. For approximately two years, Petitioner regularly complied with his ICE check-in requirements and appeared as instructed. At his final ICE check-in, in October 2023, however, ICE officers expressly informed Petitioner that he was no longer required to return for future ICE check-ins.

5. Petitioner followed that instruction. For approximately the next two years, Petitioner had no ICE check-in obligation. He did not stop reporting in defiance of an existing supervision requirement, nor did he intentionally evade ICE or attempt to conceal himself from immigration

authorities. Rather, he reasonably relied upon the Government's express instruction that he no longer needed to report.

6. During those approximately two years, Petitioner continued living openly in the community, maintained regular employment as a driver, remained connected to his family and friends, and otherwise continued his ordinary life in the United States. There is no allegation that Petitioner committed any criminal offense, violated any newly imposed reporting obligation, or engaged in any conduct demonstrating that he presents a danger to the community or a risk of flight.

7. Nevertheless, on August 29, 2026, Petitioner was suddenly apprehended by ICE while he was driving to work. Petitioner had left his home for his ordinary daily employment and was near the parking lot of a shopping center when ICE vehicles surrounded his vehicle. ICE officers took Petitioner into custody.

8. Petitioner was not apprehended while attempting to cross a border, evade immigration authorities, flee from law enforcement, or violate an active ICE check-in requirement. To the contrary, Petitioner was living in the community after having been expressly told by ICE that he no longer needed to report for check-ins.

9. The Government's decision to re-detain Petitioner under these circumstances implicates a significant constitutionally protected liberty interest. Petitioner had spent approximately two years living outside of government custody after having previously complied with ICE supervision. During that period, he established the ordinary attachments of community life, including employment, family relationships, friendships, and a stable daily routine.

10. Courts within the Ninth Circuit have recognized that a noncitizen previously released from immigration custody may acquire a protected liberty interest in continued release and that

the Government must provide constitutionally adequate procedural safeguards when it later seeks to re-detain that individual. See, e.g., *Sandhu v. Chestnut*, No. 1:26-cv-02091-DJC-JDP (E.D. Cal. Apr. 28, 2026) (finding a protected liberty interest in continued release after more than two years outside custody and recommending a bond hearing following re-detention).

11. Here, the constitutional concerns are particularly compelling because Petitioner had not simply been living in the community without governmental supervision. He had previously complied with ICE's reporting requirements for approximately two years and was then affirmatively told by ICE that future check-ins were no longer required. The Government cannot fairly characterize Petitioner's subsequent compliance with that instruction as evidence of flight or noncompliance.

12. At a minimum, due process requires a prompt and constitutionally adequate individualized custody determination addressing whether continued detention is actually necessary. Such a determination must consider Petitioner's lengthy history of compliance, the Government's express instruction that he no longer report, his lack of criminal history, his employment, his family and community ties, and the absence of any intervening conduct demonstrating danger or flight risk.

13. Petitioner’s continued detention has now become punitive in nature, violating the Due Process Clause of the Fifth Amendment.

14. This Court should grant the writ of habeas corpus and order Petitioner’s immediate release. In the alternative, the Court should order a constitutionally adequate individualized bond hearing consistent with due process requirements.

## INTRODUCTION

1. This case concerns the unconstitutional re-detention of Petitioner Abdullah Koroglu, a Turkish citizen and Kurdish asylum seeker who has lived in the United States while pursuing protection from persecution and torture. Petitioner seeks asylum, withholding of removal, and protection under the Convention Against Torture based upon his fear of persecution and torture in Turkey.

2. Petitioner entered the United States in approximately June 2022 and was thereafter placed in removal proceedings. His Notice to Appear reflects that DHS charged him as a native and citizen of Turkey.

3. After his release into the community, Petitioner complied with the supervision requirements imposed by immigration authorities. For approximately two years, Petitioner regularly appeared for ICE check-ins as instructed. He did not ignore ICE, avoid supervision, or attempt to evade immigration authorities.

4. At his final ICE check-in, in October 2023, however, ICE officials expressly informed Petitioner that he no longer needed to appear for future ICE check-ins. Petitioner accepted and relied upon that instruction.

5. For approximately the following two years, Petitioner had no ICE check-in obligation. His absence from ICE offices during this period was therefore not the result of a refusal to comply with an existing reporting requirement. It was the direct consequence of the instruction provided to him by ICE itself.

6. Petitioner did not use the absence of a reporting obligation as an opportunity to evade immigration authorities. Instead, he continued to reside openly in the community. He

maintained regular employment and continued his close relationships with his relatives and friends.

7. Petitioner has no criminal history. There is no allegation that he has committed a crime, poses a danger to the community, or has engaged in conduct demonstrating that he intends to flee from his immigration proceedings.

8. Indeed, Petitioner's conduct following his release is consistent with compliance rather than flight. He remained in the community for approximately two years after ICE expressly relieved him of the obligation to appear for further check-ins. He maintained employment and continued living his ordinary life.

9. Nevertheless, on August 29, 2026, ICE officers suddenly apprehended Petitioner at a grocery store while he was en route to begin his work as an Uber and DoorDash driver.. Petitioner had left his home in his vehicle and was near the parking lot of a shopping center when ICE vehicles surrounded him. He was taken into immigration custody and is presently detained at the Adelanto ICE Processing Center.

10. The circumstances of Petitioner's arrest are significant. Petitioner was not arrested at an ICE check-in. He was not arrested because he failed to appear for an appointment that ICE had instructed him to attend. He was not attempting to evade immigration authorities. He was simply traveling to work after approximately two years during which ICE had told him that he was no longer required to report.

11. The Government's decision to re-detain Petitioner nevertheless deprived him of the liberty he had enjoyed for approximately four years without providing him with meaningful procedural safeguards before or promptly after that deprivation.

12. Petitioner developed enduring attachments to normal life in the United States. He maintained employment, family relationships, friendships, and a stable existence in the community. *See Exhibit B, for letters from his employer, friends and family.* His liberty interest therefore cannot be treated as though the Government had continuously maintained him in custody or as though he had only recently been released.

13. Courts addressing similar re-detention circumstances have recognized that prolonged release from immigration custody may create a protected liberty interest in continued release. See *Sandhu v. Chestnut*, No. 1:26-cv-02091-DJC-JDP (E.D. Cal. Apr. 28, 2026). In *Sandhu*, the court recognized that a noncitizen who had lived outside immigration custody for more than two years had developed a constitutionally protected liberty interest in continued release and that due process required procedural safeguards upon re-detention.

14. The circumstances here are even more compelling in one important respect. Petitioner did not merely remain in the community after his initial release. He affirmatively complied with ICE reporting requirements for approximately two years before ICE itself informed him that further check-ins were no longer required.

15. Thus, the Government cannot reasonably characterize Petitioner's subsequent lack of check-ins as evidence that Petitioner abandoned his immigration obligations. Petitioner did exactly what the Government instructed him to do.

16. If ICE later determined that Petitioner's reporting obligations should be reinstated or that his custody status should be reconsidered, due process required meaningful notice and an individualized assessment of the circumstances supporting that decision, particularly where Petitioner had spent approximately two years in the community in reliance upon the Government's prior instruction.

17. Instead, Petitioner was unexpectedly taken into custody while going about his ordinary daily life. There was no intervening criminal conduct, no alleged violation of a current reporting requirement, and no apparent individualized finding that Petitioner posed a danger to the community or a risk of flight.

18. Petitioner's detention therefore raises serious questions under the Fifth Amendment. The Government may possess statutory authority to detain certain noncitizens, but the exercise of that authority remains subject to constitutional limitations and procedural due process.

19. Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment because it rests upon arbitrary governmental action, lacks adequate procedural safeguards, and bears no reasonable relationship to any legitimate governmental purpose.

20. Accordingly, Petitioner respectfully requests that this Court issue a writ of habeas corpus ordering his immediate release. Alternatively, Petitioner requests that this Court order Respondents to provide a prompt constitutionally adequate custody determination at which the Government bears the burden of establishing that continued detention is justified and that less restrictive alternatives are insufficient.

## JURISDICTION

21. This action arises under the Fifth Amendment to the Constitution of the United States, which guarantees due process of law; 28 U.S.C. § 2241 et seq. (habeas corpus); the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.; and Title 8 of the Code of Federal Regulations.

22. This Court has jurisdiction pursuant to 28 U.S.C. § 2241, because Petitioner is in custody under the authority of the United States and challenges the legality of that custody, and pursuant

to 28 U.S.C. § 1331, because this action presents questions of federal law and the United States Constitution.

23. This Court is further authorized to grant relief pursuant to the Suspension Clause of the United States Constitution, art. I, § 9, cl. 2; the All Writs Act, 28 U.S.C. § 1651; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the federal habeas corpus statute, 28 U.S.C. § 2241.

## VENUE

24. Venue is proper in this District pursuant to 28 U.S.C. § 2241 because it is the judicial district where Petitioner is confined and where the Respondents Petitioner's immediate custodians may be reached by service of process.

25. Venue is further proper because Petitioner is detained at the Adelanto ICE Processing Center in 10400 Rancho Rd Adelanto, CA 92301, which is located within the Central District of California, and Respondents exercise custody and control over Petitioner within this District. See Rasul v. Bush, 542 U.S. 466, 478–79 (2004).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although there is no statutory exhaustion requirement for a habeas petition brought by a civil immigration detainee under 28 U.S.C. § 2241, courts have at times required exhaustion as a prudential matter. Even where courts have considered exhaustion as a prudential requirement in immigration habeas cases, it is well established that exhaustion is not required where it would be futile, inadequate, or incapable of providing effective relief. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

Here, exhaustion serves no purpose because Petitioner is not merely challenging an ordinary discretionary custody determination. Rather, Petitioner challenges the legality of the Government's decision to re-detain him after a prolonged period of release during which he complied with ICE supervision and, most importantly, after ICE expressly informed him that he was no longer required to appear for future ICE check-ins.

No administrative process is capable of remedying the constitutional violations alleged here. Immigration judges cannot adjudicate Petitioner's Fifth Amendment claims, determine whether the Government deprived Petitioner of a constitutionally protected liberty interest without adequate procedural safeguards.

Moreover, Petitioner was taken into custody only on August 29, 2026. Requiring him to pursue potentially lengthy administrative procedures before obtaining judicial review would prolong the very deprivation of liberty challenged herein. Each additional day of detention constitutes a continuing restraint upon Petitioner's physical liberty.

Furthermore, pursuing a custody or bond hearing before an Immigration Judge would not provide an adequate or meaningful remedy for the constitutional violations asserted in this Petition. This case is not merely a challenge to the discretionary terms of Petitioner's release or to an Immigration Judge's bond determination. Petitioner challenges the legality of his re-detention itself, including the Government's deprivation of his protected liberty interest after a prolonged period of release and without constitutionally adequate process. An Immigration Judge's custody determination cannot adjudicate whether the Government's re-detention violated the Fifth Amendment or whether the procedures used to deprive Petitioner of his liberty satisfied

due process. Thus, even if Petitioner were able to obtain a bond hearing, such a proceeding would not resolve the constitutional questions presented in this Petition.

Nor would requiring Petitioner to pursue a bond request before seeking habeas relief serve any meaningful remedial purpose. A bond proceeding would address only whether Petitioner should be released under the applicable immigration detention framework; it would not determine whether the Government's decision to re-detain him, after approximately four years of release and supervision and after ICE expressly instructed him that he was no longer required to appear for future check-ins, was itself lawful. Because the administrative custody process cannot provide the constitutional relief sought here, requiring Petitioner to pursue such a proceeding before obtaining judicial review would be futile and would unnecessarily prolong the ongoing deprivation of his physical liberty.

The exhaustion requirement, where applied prudentially, is not intended to require a detainee to remain in custody while pursuing procedures that cannot provide timely or adequate relief. Under the circumstances presented here, exhaustion would serve no meaningful remedial purpose and would merely delay judicial review of an ongoing constitutional injury.

The Ninth Circuit has further recognized that habeas jurisdiction exists precisely to review the legality of detention where no adequate administrative remedy is available. See Singh v. Holder. Requiring Petitioner to pursue administrative remedies under these circumstances would not only be futile, but would also prolong an ongoing constitutional violation.

## FACTUAL BACKGROUND

Petitioner Abdullah Koroglu is a native and citizen of Turkey and a Kurdish asylum seeker. Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.

Petitioner was born on December 10, 1980. His Alien Registration Number is A# 241-752-919. The Notice to Appear identifies Petitioner as a native and citizen of Turkey and places him in removal proceedings under the Immigration and Nationality Act.

Petitioner entered the United States on or about June 2022, through Bridge of Americas, Texas, seeking safety and protection from persecution in Turkey.

Petitioner is Kurdish and seeks protection in the United States based upon persecution and a well-founded fear of persecution and torture on account of his Kurdish ethnicity, political opinion, membership in a particular social group, and the likelihood that he would be subjected to torture if returned to Turkey.

Petitioner was placed in removal proceedings following his entry into the United States. The Notice to Appear reflects that DHS initiated removal proceedings against Petitioner and that an asylum officer determined that Petitioner had demonstrated a credible fear of persecution or torture.

Following his release into the community, Petitioner complied with the supervision requirements imposed by immigration authorities. For approximately the first two years, Petitioner regularly appeared for his ICE check-ins as instructed.

Petitioner did not disregard his immigration obligations. To the contrary, he consistently demonstrated his willingness to comply with ICE supervision by appearing for the required appointments and maintaining contact with immigration authorities.

Petitioner attended his ICE check-ins for approximately two years without incident. There is no allegation that during this period Petitioner attempted to evade ICE, concealed himself from immigration authorities, or otherwise failed to comply with the supervision requirements imposed upon him.

At Petitioner's final ICE check-in, however, ICE officials expressly informed Petitioner that he did not need to return for any further ICE check-ins.

Petitioner relied upon that instruction. From that point forward, Petitioner was no longer subject to a recurring ICE check-in obligation. For approximately the following two years, Petitioner therefore did not report for ICE check-ins because ICE itself had informed him that such reporting was no longer required.

Petitioner's subsequent absence from ICE offices was not a refusal to comply with an existing reporting requirement. It was not an attempt to abscond from immigration supervision. It was not evidence of flight.

Rather, Petitioner did exactly what immigration authorities instructed him to do. After ICE expressly relieved him of the obligation to appear for further check-ins, Petitioner continued to reside openly in the community.

During this approximately two-year period, Petitioner maintained regular employment and continued supporting himself through lawful work. He also maintained close and meaningful relationships with his relatives and friends in the United States.

Petitioner's conduct during this period demonstrated stability and substantial community ties. He established a regular routine, maintained employment, remained connected to his family and friends, and continued living in the community without attempting to evade immigration authorities.

Petitioner has no criminal history whatsoever. He has never been arrested, charged with, or convicted of a criminal offense that would demonstrate that he poses a danger to the community.

There is likewise no intervening conduct alleged by Respondents demonstrating that Petitioner became a flight risk during the approximately two years in which he lived in the community after ICE told him that he no longer needed to report.

On August 29, 2026, Petitioner left his home in his vehicle to go to work, as he regularly did.

While Petitioner was near the parking lot of a shopping center, ICE vehicles surrounded his vehicle. Petitioner was unexpectedly apprehended by ICE officers and taken into immigration custody.

Petitioner was not attending an ICE check-in when he was arrested. He had not failed to appear for a scheduled ICE appointment. He was not attempting to evade immigration authorities. He was simply traveling to work.

The circumstances of Petitioner's arrest were therefore wholly disconnected from any failure to appear for an active ICE reporting obligation. For approximately two years before his arrest, Petitioner had no such obligation.

There is no allegation that Petitioner committed a criminal offense immediately before his arrest or that he engaged in any conduct that suddenly transformed him into a danger to the community or a substantial flight risk.

Instead, after approximately four years in the United States, including approximately two years of regular ICE compliance followed by approximately two years without a reporting obligation imposed by ICE, Petitioner was suddenly returned to physical immigration custody.

Petitioner's re-detention was particularly significant because he had spent approximately two years living outside of government custody. During that period, Petitioner developed and maintained substantial ties to the community, including regular employment and close relationships with relatives and friends.

The Government's decision to re-detain Petitioner therefore deprived him of the liberty he had enjoyed for approximately two years without any apparent intervening criminal conduct or violation of a current ICE reporting obligation.

Petitioner continues to have substantial reasons to remain in the United States and to pursue his pending applications for protection from removal. His asylum-related claims are based upon his Kurdish ethnicity, political opinion, membership in a particular social group, and fear of torture in Turkey.

Petitioner's employment, family relationships, friendships, and lack of criminal history further demonstrate that he has substantial incentives and ability to remain compliant with any reasonable conditions of supervision imposed by the Government or this Court.

Petitioner's conduct demonstrates a consistent willingness to comply with governmental instructions. He reported to ICE when required to do so, stopped reporting only after ICE expressly told him that further reporting was unnecessary, maintained employment, remained connected to his community, and continued living openly in the United States.

Under these circumstances, Petitioner's sudden re-detention raises serious constitutional concerns. The Government has deprived Petitioner of his physical liberty after approximately two years of release without providing him with a meaningful opportunity to contest the factual and legal basis for that deprivation or demonstrating through an individualized determination that continued detention is necessary.

Petitioner therefore seeks relief from this Court pursuant to 28 U.S.C. § 2241 and the Fifth Amendment. At a minimum, Petitioner is entitled to a prompt and constitutionally adequate individualized custody determination that considers his history of compliance, the Government's express instruction that he no longer report for ICE check-ins, his approximately two years of community residence, his employment, his family and community ties, his lack of criminal history, and the absence of any evidence demonstrating that he presents a danger to the community or a risk of flight.

**LEGAL FRAMEWORK**

The Due Process Clause protects all persons physically present within the United States, regardless of immigration status. *Zadvydas v. Davis, 533 U.S. 678, 693 (2001).* Freedom from physical restraint lies at the core of liberty protected by the Fifth Amendment. *Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017).*

Although Congress has authorized immigration detention under the Immigration and Nationality Act ("INA"), the Government's statutory authority remains subject to constitutional limitations. When a noncitizen who has previously been released from immigration custody is subsequently re-detained, the Due Process Clause requires consideration of the individual's protected liberty interest and the procedures necessary to prevent an erroneous deprivation of that interest.

Courts in this District have recognized that a noncitizen who has lived in the community for an extended period following release may possess a protected liberty interest in continued release and may be entitled to a prompt individualized custody or bond hearing following re-detention. *See* Sandhu v. Chestnut*, No. 1:26-cv-02091-DJC-JDP (E.D. Cal. Apr. 28, 2026).*

In Murat Edis v. Warden, Mesa Verde Detention Facility, Case No. 1:26-cv-00358-JLT-SKO (E.D. Cal. Feb. 20, 2026), the court held that re-detention without notice and a pre-deprivation hearing violated the Fifth Amendment and ordered immediate release where the government failed to demonstrate danger or flight risk.

The procedures required by due process depend upon the circumstances and are evaluated under the familiar balancing framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), including the private liberty interest at stake, the risk of erroneous deprivation, the probable value of additional procedural safeguards, and the Government's interests.

Habeas corpus under 28 U.S.C. § 2241 provides an appropriate vehicle to challenge unlawful executive detention and to obtain relief from unconstitutional confinement.

Similarly, in Hidir Ilyas Yaman v. Todd M. Lyons, et al., Case No. 1:26-cv-00556-DC-SCR (E.D. Cal. Feb. 5, 2026), the court found unconstitutional the detention of a Turkish asylum seeker who was arrested during a routine ICE check-in after previously being released into the community. The court specifically emphasized that appearing at a routine ICE appointment constituted "an act of compliance, not an attempt to gain admission." The court further concluded that re-detention following release into the community implicates a constitutionally protected liberty interest requiring procedural due process protections.

Numerous district courts within California have likewise recognized that due process requires individualized custody determinations before re-detention of noncitizens previously released into the community.

**COUNT I**

**Violation of Procedural Due Process**

1. Petitioner possesses a constitutionally protected liberty interest in remaining free from physical detention after years of peaceful residence and compliance with immigration supervision in the United States.

2. Respondents deprived Petitioner of that liberty interest without constitutionally adequate procedures. Petitioner was detained without notice, without any opportunity to be heard, and without any pre-deprivation hearing before a neutral decisionmaker. Respondents failed to conduct any individualized determination regarding danger to the community or risk of flight.

3. Prior to his detention, Petitioner had continuously complied with ICE supervision for an extended period. He voluntarily appeared at every appointment, remained in regular contact with immigration authorities, and consistently attempted to satisfy every reporting obligation imposed upon him.

4. The Fifth Amendment protects persons physically present in the United States from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

5. Petitioner possesses a constitutionally protected liberty interest in remaining free from physical immigration detention after having lived in the community for approximately two years following his prior release from immigration custody.

6. That liberty interest is particularly substantial here because Petitioner did not merely remain outside custody without governmental supervision. For approximately two years, Petitioner regularly complied with ICE's reporting requirements and appeared for his required ICE check-ins.

7. At his final ICE check-in, immigration officials expressly informed Petitioner that he no longer needed to report for future ICE check-ins.

8. Petitioner relied upon that governmental instruction. For approximately the following two years, Petitioner was not subject to a recurring ICE check-in obligation and therefore did not report to ICE offices.

9. Petitioner's subsequent absence from ICE check-ins cannot reasonably be characterized as intentional noncompliance. Petitioner did not disregard an active reporting requirement. He followed the instruction given to him by ICE.

10. During those approximately two years, Petitioner established and maintained enduring attachments of normal life in the United States, including regular employment and close relationships with relatives and friends. Petitioner therefore had a significant and constitutionally protected private interest in remaining free from physical detention.

11. Respondents did not provide Petitioner with meaningful notice that his custody status would be changed or that he was required to resume reporting to ICE before taking him into physical custody. Respondents likewise failed to provide Petitioner with a prompt and constitutionally adequate individualized custody determination following his re-detention.

12. The absence of such procedural safeguards created a substantial risk that Petitioner's protected liberty would be erroneously deprived without any meaningful determination of whether continued detention was actually necessary.

13. Petitioner's circumstances demonstrate the importance of individualized review. He has no criminal history, has maintained regular employment, has substantial family and community ties, and previously demonstrated approximately two years of compliance with ICE supervision.

14. As a direct and proximate result of these constitutional violations, Petitioner has suffered and continues to suffer an unlawful deprivation of his physical liberty. Petitioner's detention therefore violates the Due Process Clause of the Fifth Amendment.

**COUNT II**

**Arbitrary and Unreasonable Re- Detention in Violation of the Fifth Amendment**

15. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

16. The Due Process Clause of the Fifth Amendment prohibits arbitrary governmental action that deprives an individual of his physical liberty. Civil immigration detention is regulatory rather than punitive in nature. Accordingly, detention must bear a reasonable relationship to a legitimate governmental objective and cannot be imposed arbitrarily or without meaningful consideration of the circumstances supporting continued confinement.

17. Petitioner's re-detention was arbitrary and unreasonable because there was no intervening criminal conduct, no demonstrated violation of an active ICE reporting requirement, and no apparent individualized finding that Petitioner had become dangerous or likely to flee.

18. Petitioner's detention was not based upon any criminal conduct, any finding that he posed a danger to the community, any determination that he presented a flight risk, or any evidence that he intentionally violated the conditions of his immigration supervision.

19. Instead, at his final ICE check-in, ICE expressly instructed Petitioner that he no longer needed to report for future check-ins. Petitioner complied with that instruction for approximately

two years. The Government therefore had extensive evidence of Petitioner's willingness and ability to comply with immigration supervision.

20. The circumstances of the arrest demonstrate that Petitioner was not attempting to evade immigration authorities. He was engaged in an ordinary and lawful activity and was not subject to a current ICE check-in obligation.

21. If Respondents believed that Petitioner's custody status should be changed or that his reporting obligations should be reinstated, they could have provided appropriate notice and undertaken an individualized assessment of his circumstances. Instead, Respondents deprived Petitioner of his physical liberty without providing him with a meaningful explanation or prompt individualized determination demonstrating why detention, rather than continued community supervision or another less restrictive measure, was necessary.

22. Civil detention is intended to ensure appearance at future immigration proceedings and to protect the public where appropriate. Neither objective justified Petitioner's detention. The very circumstances surrounding Petitioner's arrest demonstrate the irrational nature of Respondents' decision.

23. Unless this Court grants habeas relief, Petitioner will continue to suffer an unlawful deprivation of liberty resulting from Respondents' arbitrary reliance upon an apparent technological error rather than constitutionally adequate decision-making.

**COUNT III**

**FAILURE TO CONSIDER LESS RESTRICTIVE ALTERNATIVES IN VIOLATION OF THE FIFTH AMENDMENT**

24. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

25. Civil immigration detention is regulatory rather than punitive in nature. Accordingly, detention may not be imposed where the Government's legitimate objectives can reasonably be achieved through less restrictive means.

26. Petitioner has no criminal history and has never been convicted of a criminal offense demonstrating that he poses a danger to the community. Petitioner maintained regular employment throughout his approximately four years in the community preceding his arrest. Petitioner maintains close relationships with relatives and friends in the United States and has substantial community ties.

27. The Fifth Amendment requires the Government to employ detention only where it is reasonably necessary to accomplish a legitimate governmental purpose. When less restrictive alternatives are readily available and capable of serving the Government's interests, continued physical detention becomes excessive and constitutionally unreasonable.

28. Here, Respondents possessed readily available alternatives to detention. Petitioner previously demonstrated his ability to comply with immigration supervision. For approximately two years, he regularly appeared for ICE check-ins when required. When ICE subsequently informed Petitioner that he no longer needed to report for future check-ins, Petitioner followed that instruction rather than attempting to evade immigration authorities. Petitioner's conduct therefore demonstrates that he is capable of complying with reasonable conditions of release.

29. Available alternatives to physical detention include release on reasonable conditions of supervision, periodic reporting if reinstated by ICE, electronic monitoring, participation in an Alternatives to Detention ("ATD") program, or other conditions reasonably tailored to the Government's legitimate interests. Respondents have not demonstrated why physical incarceration is necessary notwithstanding these available alternatives.

30. Nor have Respondents identified any individualized fact showing that Petitioner's employment, family ties, history of compliance, and willingness to comply with reasonable supervision are insufficient to ensure his appearance in immigration proceedings.

31. By refusing to meaningfully consider alternatives to detention, Respondents imposed the most restrictive form of civil custody without demonstrating that such extraordinary restraint was necessary. The failure to consider available alternatives rendered Petitioner's detention excessive, arbitrary, and inconsistent with the Due Process Clause of the Fifth Amendment.

32. Under these circumstances, Petitioner's continued detention is not reasonably related to any legitimate governmental objective and therefore violates the Constitution.

**COUNT IV**

**VIOLATION OF THE INA**

1. Petitioner realleges and incorporates by reference each allegation contained in the preceding paragraphs as though fully set forth herein.

2. The Immigration and Nationality Act authorizes immigration detention only under the circumstances and procedures prescribed by Congress. Even where detention is authorized by statute, DHS must exercise its detention authority in a manner consistent with both the INA and the Constitution.

3. Petitioner is presently in pending removal proceedings before the Los Angeles Immigration Court. He is not subject to a final order of removal, and his applications for asylum, withholding of removal, and protection under the Convention Against Torture remain pending.

4. Since entering the United States, Petitioner has continuously complied with ICE supervision, appeared for required appointments, and complied with reporting requirements to the best of his ability.

5. During that period, ICE expressly informed Petitioner that he was no longer required to report for future ICE check-ins. Petitioner followed that instruction and remained in the community without any active ICE reporting obligation for approximately two years.

6. Respondents nevertheless re-detained Petitioner on August 29, 2026, without identifying any intervening criminal conduct or violation of a current reporting obligation.

7. The detention authority granted by Congress necessarily presupposes that DHS will exercise its discretion through reasoned, individualized decision-making based upon reliable facts.

8. Moreover, Respondents failed to meaningfully consider whether less restrictive alternatives to detention would adequately serve the Government's legitimate interests. Petitioner voluntarily appeared for his scheduled appointment, had consistently complied with immigration supervision, possessed no criminal history, and maintained substantial community ties. These circumstances strongly favored continued supervision through less restrictive means rather than physical detention.

9. Respondents' actions are inconsistent with the statutory purpose of civil immigration detention, which is to reasonably ensure appearance at future proceedings and protect the public

where necessary - not to punish individuals who have demonstrated substantial compliance with immigration supervision.

10. Accordingly, Petitioner's continued detention exceeds the lawful scope of detention authorized under the Immigration and Nationality Act and is therefore unlawful.

//

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Abdullah Koroglu respectfully requests that this Court grant the following relief:

### A. Immediate Release from ICE Custody

1) Assume jurisdiction over this matter;
2) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;
3) Order Respondents to show cause why the writ should not be granted within three days and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;
4) Declare that Petitioner's continued detention is no longer reasonably related to any legitimate governmental purpose, and that under the totality of the circumstances, detention has become excessive, arbitrary, and punitive in effect.
5) Declare that Respondents' actions violate the Administrative Procedure Act;
6) Order that Petitioner be released without bond, or, in the alternative, subject to reasonable conditions of supervision, including but not limited to electronic

monitoring, reporting requirements, or participation in an Alternatives to Detention ("ATD") program, as the Court deems appropriate.

**B. Alternative Relief: Prompt and Constitutionally Adequate Custody Hearing**

7) In the alternative, issue a writ of Habeas Corpus ordering Respondents to provide Petitioner with a constitutionally-adequate bond hearing, at which Respondents must bear the burden by clear and convincing evidence of justifying his future detention by demonstrating that he is a flight risk or a danger to the community;

8) Require consideration of less restrictive alternatives to detention, including release on conditions, parole, or ATD, before any decision to continue confinement.

**C. Protection Against Transfer and Preservation of Jurisdiction**

9) Order Respondents to refrain from transferring Petitioner out of the jurisdiction of this Court during the pendency of this habeas proceeding, so as to preserve this Court's jurisdiction.

10) Grant such other and further relief as this Court deems just, equitable, and proper under the circumstances.

DATED: 09/03/2026

Saime Atakan

Attorney for Petitioner